2012 ME 53

## FRIENDS OF the BOUNDARY MOUNTAINS

v.

## LAND USE REGULATION COMMISSION et al.

Supreme Judicial Court of Maine.

Argued: Sept. 14, 2011.

Decided: April 5, 2012.

Philip C. Worden, Esq. (orally), Northeast Harbor, for appellant Friends of the Boundary Mountains.

William J. Schneider, Attorney General, and Amy Mills, Asst. Atty. Gen. (orally), Office of Attorney General, Augusta, for appellee Land Use Regulation Commission.

Juliet T. Browne, Esq. (orally), and Scott D. Anderson, Esq., Verrill Dana LLP, Portland, for appellee TransCanada Maine Wind Development, Inc.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

JABAR, J.

[¶ 1] Pursuant to 12 M.R.S. § 689 (2011), Friends of the Boundary Mountains

(FBM) appeals from a decision of the Land Use Regulation Commission approving the issuance of a permit to TransCanada Maine Wind Development, Inc. to construct a wind energy facility in Franklin County. FBM argues that LURC erred by (1) denying FBM's request to reopen a public hearing to consider TransCanada's amended application; (2) failing to abide by its own procedural rules; (3) ignoring several issues raised by FBM during the administrative proceedings; and (4) finding that TransCanada's wind energy project will provide "significant tangible benefits," 12 M.R.S. § 685–B(4–B)(D) (2011); 35–A M.R.S. § 3451(10) (2009).[1] We disagree and affirm the judgment.

## I. BACKGROUND

[¶ 2] In December 2009, TransCanada filed an application with LURC for a permit to construct the Kibby Expansion Wind Power Project in the Townships of Kibby and Chain of Ponds. *See generally* 12 M.R.S. §§ 681–689 (2011);[2] 35–A M.R.S. §§ 3401–3457 (2009). As initially proposed, the project was a forty-five megawatt wind energy generation facility, including fifteen wind turbines, created as an expansion of an existing forty-four-turbine wind facility operated by TransCanada.

[¶ 3] On May 11 and 12, 2010, LURC held a public hearing to allow interested parties to comment on the application, present testimony, and submit information associated with the project. FBM, as one of four intervenors, participated in this public hearing. FBM raised several issues at the hearing, as well as in their June 6, 2010, brief. Following the hearing, LURC

planned to hold a public deliberation on July 7, 2010, in accordance with the "Third Pre-hearing Procedural Order," which stated that LURC "will deliberate with proposed findings of fact, as drafted by [LURC] staff ..., but will deliberate without a staff recommendation as to whether to grant or deny the permit." On July 7, 2010, LURC held a public deliberation in compliance with the Third Pre-hearing Procedural Order, after which it directed its staff to draft a decision denying TransCanada's application.

[¶ 4] On August 4, 2010, prior to the scheduled vote on the draft decision, LURC, over FBM's objection, granted TransCanada's request to reopen the record to allow TransCanada to amend its application. TransCanada's amended application proposed an eleven-turbine expansion, eliminating the four southernmost turbines and the associated access road contained in the original proposal. In response to the amended application, FBM requested that LURC conduct a public hearing, while TransCanada asked that LURC solicit written comments from the public. The remaining intervenors "neither request[ed] nor ... object[ed] to a public hearing," but "recommend[ed] that [LURC] allow a 30 day public comment period." LURC voted to review the amended proposal after a public comment period and not to hold an additional hearing.

[¶ 5] Following the public comment period and written and oral arguments by the parties, and with the benefit of a "deliberation notebook" prepared by staff,[3]

---

1. Title 35–A M.R.S. § 3451(10) (2009) has since been amended. *See* P.L.2009, ch. 642, § A–6 (effective July 12, 2010) (codified at 35–A M.R.S. § 3451(10) (2011)).

2. Although some of these statutes were amended after these proceedings were commenced, none of the amendments affect the

present appeal, and we therefore cite to the current codification of Title 12.

3. The "deliberation notebook" contained recommended findings on applicable review criteria, but it did not contain a proposed recommendation on whether to grant or deny the permit.

LURC voted to approve TransCanada's amended application on December 1, 2010. At LURC's direction, staff prepared a written decision, which LURC approved with minor changes on January 5, 2011. Among other things, LURC's decision found that the project would provide "significant tang[ible] benefits" as a result of the following: the employment of several hundred workers during construction; economic benefits to local businesses during the construction period; the creation of one permanent job in operations and maintenance; a $110,000 grant from TransCanada to the Department of Labor (DOL) to support green jobs training in Franklin County; $13 million in anticipated income taxes over the next twenty-five years; a $110,000 grant from TransCanada to the High Peaks Alliance (HPA) to support land conservation in Franklin County; and $10 million in property taxes over the next twenty years. Despite finding that "a community benefits package in accordance with PL 2009, Ch. 642 is not required," LURC noted that TransCanada also planned to contribute approximately $660,000 to the local community over the next twenty years. FBM timely appealed LURC's decision. *See* 5 M.R.S. §§ 11001(1), 11002(3) (2011); 12 M.R.S. § 689; M.R. Civ. P. 80C.

## II. DISCUSSION

### A. Public Hearing

■ [¶ 6] FBM argues that LURC violated its own rules by refusing to hold a public hearing on TransCanada's amended application. An agency's interpretation of its own internal rules will be given considerable deference and will not be set aside unless the rule plainly compels a contrary result, or the rule interpretation is contrary to the governing statute. *See Beauchene v. Dep't of Health and Human Servs.*, 2009 ME 24, ¶ 11, 965 A.2d 866;

*Schwartz v. Unemployment Ins. Comm'n,* 2006 ME 41, ¶ 9, 895 A.2d 965.

■ [¶ 7] LURC's rules give it discretion to hold or reopen a hearing. The rules state that, in accordance with "Chapter 4 of these rules," LURC "shall provide the applicant, the petitioner, or any other interested person the opportunity to request a public hearing on any application." 4 C.M.R. 04–061 005–1 § 5.02 (2011). Chapter 4 of the Rules provides:

> Hearings on an application are *at the discretion of the Commission* unless otherwise required by the Constitution of Maine or statute. In determining whether a hearing is advisable, the Commission shall consider the degree of public interest and the likelihood that information presented at the hearing will be of assistance to the Commission in reaching its decision.

4 C.M.R. 04–061 004–4 § 4.04(5)(b) (2011) (emphasis added). The rules also provide that "the Commission *may elect* to reopen a hearing," 4 C.M.R. 04–061 005–5 § 5.18(3) (2011) (emphasis added), and vest LURC with discretion to deviate from its procedural rules in certain circumstances, *see* 4 C.M.R. 04–061 005–1 to –2 § 5.06(2)(f) (2011); *see also* 5 M.R.S. § 9053(4) (2011).

[¶ 8] The rules do not mandate that once LURC holds a public hearing on an application, it is then required to reopen the hearing upon a reopening of the record. As the plain language of the rules indicates, whether LURC opens the matter for a public hearing upon receiving an initial application is, in the first place, a decision committed to its discretion, and LURC may thereafter "elect" to reopen a hearing prior to the issuance of a final order or decision. 4 C.M.R. 04–061 004–4 § 4.04(5)(b); 4 C.M.R. 04–061 005–5 § 5.18(3). After TransCanada amended its application, LURC reopened the record

but did not reopen the hearing. FBM was given, and acted upon, the opportunity to introduce additional documents and make arguments opposing TransCanada's amended application.

[¶ 9] Part of FBM's claim that LURC abused its discretion either by not reopening the public hearing on TransCanada's initial application or by not conducting a new hearing on the amended application is the argument that FBM was not given the opportunity to cross-examine witnesses regarding the amended eleven-turbine proposal. Although LURC's rules expressly provide that intervenors, like FBM, "shall have the right of oral cross-examination," that right is contingent on the discretionary decision to open or reopen an application for public hearing. *See* 4 C.M.R 04–061 005–4 § 5.16(1)(b) (2011). The procedural right to cross-examination contained in the rules cannot, in these circumstances, be antecedent to the hearing itself. Although FBM does not expressly make the argument that principles of due process required a hearing on the amended eleven-turbine proposal, LURC's decision to allow FBM and other interested parties time to submit comments and provide oral argument in response to the amended proposal would satisfy a constitutional inquiry. *See Fichter v. Bd. of Envtl. Prot.*, 604 A.2d 433, 436–38 (Me.1992). At no point during the administrative process was FBM inhibited from expressing the basis for its opposition to either the original fifteen-turbine proposal or the amended eleven-turbine proposal.

[¶ 10] Given the voluminous existing record and the limited nature of the changes made to the original proposal, the Board did not abuse its discretion in denying FBM's request to reopen the hearing on the original application or to conduct a new hearing on the amended application.[4] *See Sager v. Town of Bowdoinham*, 2004 ME 40, ¶ 11, 845 A.2d 567 ("A party appealing a decision committed to the reasonable discretion of a State or local decisionmaker has the burden of demonstrating that the decisionmaker abused its discretion in reaching the decision under appeal."); *Forest Ecology Network v. Land Use Regulation Comm'n*, 2012 ME 36, ¶¶ 34–41, 39 A.3d 74 (holding that LURC did not violate its rules or abuse its discretion by not conducting new hearings on an applicant's amended plan).

B. LURC's Third Procedural Order

[¶ 11] FBM argues that LURC violated the Third Pre-hearing Procedural Order because the staff's "deliberation notebook" contained "a series of recommendations on the key issues that lead to the conclusion that [LURC] should grant the permit." FBM's arguments are unpersuasive. In particular (1) the Third Pre-hearing Procedural Order applied to the July 7, 2010, deliberation, not to the December 1, 2010, delibera-

4. We have affirmed decisions in which expedited wind energy applications have been reviewed without a public hearing. *See Martha A. Powers Trust v. Bd. of Envtl. Prot.*, 2011 ME 40, 15 A.3d 1273; *Concerned Citizens to Save Roxbury v. Bd. of Envtl. Prot.*, 2011 ME 39, 15 A.3d 1263. These cases involved Board of Environmental Protection review of licensing decisions of the Commissioner of the Department of Environmental Protection. *Martha A. Powers Trust*, 2011 ME 40, ¶ 1, 15 A.3d 1273; *Concerned Citizens to Save Roxbury*, 2011 ME 39, ¶ 1, 15 A.3d 1263. In each case, this Court found no abuse of discretion in the Board's decision that public hearings were not necessary. *Martha A. Powers Trust*, 2011 ME 40, ¶¶ 9–10, 15 A.3d 1273; *Concerned Citizens to Save Roxbury*, 2011 ME 39, ¶¶ 18–23, 15 A.3d 1263. These cases are distinguishable from this case, however, because in this case full public hearings on the applications were initially held at the Department level.

tion; (2) even if the Third Pre-hearing Procedural Order applied to the December 1, 2010, deliberation, there was no violation because the staff's "deliberation notebook" did not provide LURC with a recommendation as to whether to grant or deny the permit; and (3) FBM has not shown that it was prejudiced by any violation of the Third Pre-hearing Procedural Order, *see Town of Jay v. Androscoggin Energy, LLC,* 2003 ME 64, ¶ 9, 822 A.2d 1114.

## C. Other Relevant Issues

[¶ 12] FBM argues that LURC ignored several issues raised by it during the administrative hearings. These issues include whether the project had any effect on Canada, whether an offset for public subsidies was considered when examining tangible benefits, whether LURC considered the effect on wildlife in determining noise levels, and whether LURC considered the potential for congestion of transmission lines. These arguments are not persuasive. Pursuant to 5 M.R.S. § 9061 (2011), "[e]very agency decision made at the conclusion of an adjudicatory proceeding . . . shall include findings of fact sufficient to apprise the parties and any interested member of the public of the basis for the decision." The Wind Energy Act, 35–A M.R.S. §§ 3401–3457, and provisions in LURC's enabling statute, *see* 12 M.R.S. § 685–B(4), (4–B), require LURC to make certain findings when reviewing "expedited wind energy development" applications. Although these statutes do "not require an agency to make a detailed incident-by-incident fact finding," *Murphy v. Bd. of Envtl. Prot.,* 615 A.2d 255, 260 (Me.1992), the findings must be sufficiently specific to permit meaningful appellate review, *see Schwartz,* 2006 ME 41, ¶ 10, 895 A.2d 965. If an "agency fails to make sufficient and clear findings of fact and such findings are necessary for judicial review, [this Court] will remand the matter to the agency or

board to make the findings." *Carroll v. Town of Rockport,* 2003 ME 135, ¶ 30, 837 A.2d 148.

[¶ 13] Contrary to FBM's assertions, LURC was not required to consider the first two issues raised by FBM, LURC considered everything statutorily required for the third issue, and the party on whose behalf the fourth issue was raised did not appeal the issue.

[¶ 14] Regarding the first issue, LURC is not required to consider the project's effects on Canada, but rather its effects "on the scenic character or existing uses related to scenic character of the scenic resource of *state or national significance.*" 35–A M.R.S. § 3452(1) (emphasis added). As to the second issue, no statutory provision required LURC to consider an offset of the dollar amount for the public subsidies TransCanada will receive in analyzing whether the project will provide "significant tangible benefits." 12 M.R.S. § 685–B(4–B)(D); 35–A M.R.S. § 3451(10). Regarding the third issue— the effects of noise generated by the project on wildlife—LURC summarized the positions of FBM and IF & W in its decision, and it ultimately made the finding required by statute: that the noise generated by the project satisfied applicable noise-control laws. *See* 12 M.R.S. § 685–B(4–B)(A). Finally, regarding the fourth issue, none of the applicable review criteria requires a finding relating to the potential for congestion of transmission lines, and the interested party on whose behalf the argument is being raised has not appealed the decision.

## D. "Tangible Benefits"

[¶ 15] FBM argues that LURC erred in interpreting the term "tangible benefits" to include TransCanada's grants to DOL and HPA, as well as the payments proposed in the "community benefits pack-

age." "[W]e directly review an agency's decision for an abuse of discretion, error of law, or findings not supported by the evidence." *York Ins. of Me., Inc. v. Superintendent of Ins.*, 2004 ME 45, ¶ 13, 845 A.2d 1155.

■■ [¶ 16] "As a general principle of statutory construction, enactments made by a subsequent Legislature may be examined to illuminate the meaning of prior legislative terminology that is ambiguous." *Lee v. Massie*, 447 A.2d 65, 69 (Me.1982). At issue is the definition of "tangible benefits." Pursuant to 12 M.R.S. § 685–B(4–B)(D), the developer of a wind energy development-here, TransCanada—must demonstrate that the proposed generating facility "[w]ill provide significant tangible benefits." In turn, 35-A M.R.S. § 3451(10) defines "tangible benefits." Effective July 12, 2010, section 3451(10) was amended in the following way:

> "Tangible benefits" means environmental or economic improvements *or benefits to residents of this State* attributable to the construction, operation and maintenance of an expedited wind energy development, including but not limited to: *property tax payments resulting from the development; other payments to a host community, including, but not limited to, payments under a community benefit agreement;* construction-related employment; local purchase of materials; employment in operations and maintenance; reduced property taxes; reduced electrical rates; *land or* natural resource conservation; performance of construction, operations and maintenance activities by trained, qualified and licensed workers in accordance with Title 32, chapter 17 and other applicable

laws; or other comparable benefits, with particular attention to assurance of such benefits to the host community *or communities* to the extent practicable and affected neighboring communities.

P.L.2009, ch. 642, § A–6 (effective July 12, 2010) (codified at 35–A M.R.S. § 3451(10) (2011)). The parties and LURC agree that the pre-amendment version of this definition applies to the project. *See* P.L. 2009, ch. 642, § A–10. Thus, factors such as "property tax payments resulting from the development" and "other payments to a host community" were not explicitly included in the applicable version of section 3451(10), and TransCanada was not required to make "payments under a community benefit agreement" to satisfy the definition of "tangible benefits." *See* P.L. 2009, ch. 642, §§ A–2 to A–7.[5]

[¶ 17] LURC properly considered TransCanada's proposed grants and payments. Under the amendments effective on July 12, 2010, TransCanada's proposed payments are properly considered "tangible benefits." Pursuant to P.L.2009, ch. 642, § A–6, "other payments to a host community" and "payments under a community benefit agreement" are now specifically included in the definition of "tangible benefits." *See also* P.L.2009, ch. 642, §§ A–2, A–3 (defining "community benefits package" and "community benefit agreement"). Although the 2010 amendments do not apply to TransCanada's project, FBM itself asserts that the 2010 amendments *clarify* existing law. Thus, pursuant to FBM's own analysis, the pre-amendment definition of "tangible benefits" would include "other payments to a host

---

5. With certain exceptions, an applicant seeking to demonstrate significant tangible benefits is now "required to establish a community benefits package valued at no less than $4,000 per year per wind turbine included in the expedited wind energy development, averaged over a 20–year period." P.L.2009, ch. 642, § A–7 (codified at 35–A M.R.S. § 3454(2) (2011)).

community" and "payments under a community benefit agreement."

[¶ 18] Furthermore, LURC properly interpreted the pre-amendment definition of "tangible benefits" to include TransCanada's proposed "community benefits package" and the grants to DOL and HPA.[6] The pre-amendment version of 35–A M.R.S. § 3451(10) defines "tangible benefits" as "environmental or economic improvements attributable to the construction, operation and maintenance of an expedited wind energy development." The pre-amendment definition further provides a non-exhaustive list of examples.

[¶ 19] FBM disputes whether TransCanada's payments are "*attributable* to the construction, operation and maintenance" of the project. 35–A M.R.S. § 3451(10) (emphasis added). The plain meaning of "attribute" is "[t]o assign to a cause or source." Webster's New College Dictionary 75 (3d ed. 2008). TransCanada and LURC argue that the proposed "community benefits package" and the grants to DOL and HPA constitute "tangible benefits" because they would not occur but for the construction, operation and maintenance of the project. Conversely, FBM asserts that these payments come from TransCanada's general wealth and do not result from the "the construction, operation and maintenance" of the project. 35–A M.R.S. § 3451(10).

█ [¶ 20] To the extent that the term "attributable" in 35–A M.R.S. § 3451(10) is ambiguous, LURC's interpretation is reasonable and should be accorded deference. *See Dep't of Corr. v. Pub. Utils. Comm'n,* 2009 ME 40, ¶ 8, 968 A.2d 1047. "To determine the reasonableness of an agency's interpretation, [this Court] examine[s] the legislative history as well as the context of the whole statutory scheme of which the section at issue forms a part, so that a harmonious result, presumably the intent of the Legislature, may be achieved." *Allied Res., Inc. v. Dep't of Pub. Safety,* 2010 ME 64, ¶ 21, 999 A.2d 940 (quotation marks omitted). The Wind Energy Act codified the Legislature's determination that "it is in the public interest to explore opportunities for and encourage the development, where appropriate, of wind energy production in the State," and "that development of the State's wind energy resources should be undertaken in a manner that ensures significant tangible benefits to the people of the State." 35–A M.R.S. § 3402. Given these goals, LURC's broad interpretation of the term "attributable" furthers the purpose of the statute as a whole. Payments to host communities, such as those at issue here, benefit those communities and the State regardless of whether they flow directly and organically from the project itself or from the applicant's own wealth. In either case, such payments would not occur or benefit the State but for the approval and resultant "construction, operation and maintenance" of the project. 35–A M.R.S. § 3451(10).

[¶ 21] Notwithstanding LURC's conclusion that the "community benefits package" and the payments to DOL and HPA fell within the definition of the "tangible benefits" that are "attributable to the construction, operation and maintenance" found in the pre-amendment version of 35–A M.R.S. § 3451(10), LURC made findings that would independently support its deci-

---

6. LURC's determination in this case is consistent with its stated policy. Prior to the 2009 amendments, LURC's "Policy on implementing the tangible benefits provision" stated that tangible benefits in the form of "payments to the State or third-parties to undertake projects that will provide tangible benefits, such as land conservation, habitat improvement, or recreational access, are acceptable so long as additional to required regulatory compensation."

sion to approve TransCanada's amended application. Specifically, LURC found that the project, as proposed, would "result in the employment of several hundred workers during construction, with a large majority being from Maine," provide "indirect benefits to local businesses during the construction period," and create "1 additional permanent job in operations and maintenance." *See* 35–A M.R.S. § 3451(10) (including, among the non-exhaustive list of "tangible benefits" to be considered during the expedited permitting process, "construction-related employment[,] local purchase of materials[,] [and] employment in operations and maintenance") (enacted by P.L.2007, ch. 661, § A–7 (effective April 18, 2008)). In addition, LURC concluded that the project would generate "an estimated $13 million in State income taxes over a 25–year period."

[¶ 22] LURC's additional findings comport with the type of tangible, economic benefits that are expressly stated in the pre-amendment version of 35–A M.R.S. § 3451(10). FBM does not, and cannot, make the argument that these "tangible benefits" fall outside the scope of the pre-amendment definition of the term in 35–A M.R.S. § 3451(10). The creation of jobs, the indirect benefits to local businesses during the construction period, and the generation of 13 million dollars in State income taxes over a 25–year period are all directly "attributable to the construction, operation and maintenance" of the project. That LURC reasonably construed 35–A M.R.S. § 3451(10) to include the "community benefits package" and the payments to DOL and HPA in its "tangible benefits" analysis-beyond what the express language of the pre-amendment definition required at the time-proves to be of little consequence to the disposition of this appeal. *See Rangeley Crossroads Coal. v. Land Use Regulation Comm'n,* 2008 ME 115, ¶ 10, 955 A.2d 223 ("We ... do not substi-

tute our own judgment for that of the agency and must affirm findings of fact if they are supported by substantial evidence in the record.").

[¶ 23] For these reasons, LURC's interpretation of "tangible benefits" was reasonable, and LURC committed no error in considering TransCanada's community benefits package and the grants to DOL and HPA.

The entry is:

Judgment affirmed.