STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-18-52

| | |
|---|---|
| ESTATE OF MARSHALL SANTOS, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | **ORDER ON PETITIONER'S RULE** |
| ) | **80C APPEAL** |
| JEANNE M. LAMBREW, ) | |
| COMMISSIONER DEPARTMENT ) | |
| OF HEALTH AND HUMAN ) | REC'D CUMB CLERKS OFC |
| SERVICES, ) | FEB 26 '20 PH3:17 |
| ) | |
| Respondent. ) | |

Before the Court is Petitioner Daniel Boutin, as special administrator of the Estate of Marshall Santos's, Rule 80C appeal from a decision of Respondent, the Maine Department of Health and Human Services (the "Department"). For the following reasons, the Petitioner's appeal is denied.

## I.  Background

On December 1, 2017, Marshall Santos ("Mr. Santos") was admitted to Saint Joseph's Rehabilitation and Residence ("Saint Joseph's"). (R. 132.) On January 4, 2018, Mr. Santos filed an application with the Department requesting that MaineCare cover his long-term care costs at Saint Joseph's starting January 1, 2018. (R. 223.) At all relevant times, Mr. Santos was involved in divorce proceedings with his then wife, Janice Santos.[1] (R. 163.) An automatic injunction was in place forbidding either party to "sell, transfer, give away, encumber, conceal, or dispose of any property owned individually or jointly by the parties, unless it is done (a) with the written consent of

---

[1] Mr. Santos filed for divorce on July 31, 2017, and Mrs. Santos filed a counterclaim also seeking, *inter alia*, a divorce and her share of marital property. (R. 319.)

For Plaintiff: Paul Shapiro, Esq.                    For Defendant: Thomas Quinn, AAG

both parties, (b) to purchase the necessities of life, (c) in the usual course of a business owned by either party, or (d) with the permission of the court." (R. 164.)

Mr. Santos listed the following assets on his application: (1) a 1987 40-foot boat; (2) his primary residence at 102 Pleasant Avenue in Portland; (3) CPort Savings Account; (4) Metlife Stock; (5) TD Bank Account; and (6) rental property at 158 Congress Street (hereinafter the "Congress Street Property"). (R. 129-32, 223.) The record evidences that Mr. Santos was the sole owner of the Congress Street Property, but that Mrs. Santos was seeking to establish, at least a portion of it, as marital property. (R. 158; 318-19.) The MaineCare program requires applicants to "use their assets to meet their needs before MaineCare will be available." 10-144 C.M.R. ch. 332, pt. 16, § 2 (2019). Unavailable or exempt assets are not used in determining eligibility, whereas assets that are "potentially available" require applicants to "take action to make them available." *Id.* Initially, in processing the application, the Department considered only Mr. Santos's primary residence at 102 Pleasant Avenue to be an exempt asset. (R. 223, 269.) Accordingly, on March 10, 2018, the Department denied his application on the grounds that Mr. Santos's countable assets exceeded the asset limit. (R. 139.)

On March 15, 2018, Mr. Santos appealed to the Department's Office of Administrative Hearings. On August 14, 2018, an administrative hearing was held before hearing officer Tamra Longanecker. (R. 230.) At the time of the hearing, the Department did not consider the boat to be an available asset, considering Mr. Santos lost financial control of the boat when it was seized and subsequently sold as a result of South Port Marine, LLC foreclosing on a maritime lien. (R. 149, 176.) Accordingly, the sole issue at hearing was whether the Congress Street Property was an "available asset," thereby precluding his eligibility. (R. 225.) Ultimately, on October 12, 2018, the hearing officer upheld the Department's determination that Mr. Santos did not qualify

for MaineCare. (R. 224.) Specifically, the hearing officer concluded that Mr. Santos failed to "take action" and file a motion to lift the preliminary injunction and sell the Congress Street Property, and that the property was therefore an "available asset." (R. 227-29.)

Mr. Santos filed this appeal pursuant to M.R. Civ. P. 80C, and passed away shortly thereafter on November 15, 2018. As a result of his passing, the divorce proceeding was dismissed on January 8, 2019.[2] After multiple continuances, the Estate was eventually substituted for Mr. Santos personally in this matter. Petitioner's Rule 80C appeal asks the Court to modify the Department's decision, finding that the Congress Street Property was not an "available asset," and that Mr. Santos was eligible for MaineCare from January 1, 2018, until his death. (Pet'rs' Br. 14.)

## II. Standard of Review

When acting in an appellate capacity pursuant to Rule 80C and the Administrative Procedures Act, 5 M.R.S. §§ 110011-11008, the court reviews the agency's decision directly for "an abuse of discretion, error of law, or findings not supported by the evidence." *Guar. Trust Life Ins. Co. v. Superintendent of Ins.*, 2013 ME 102, ¶ 16, 82 A.3d 121. The court may reverse or modify an administrative decision if the findings, inferences, conclusions or decisions are: (1) in violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by bias or error of law; (5) unsupported by substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion. 5 M.R.S. § 11007(4)(C) (2019).

---

[2] *Marshall Santos v. Janice Santos*, No. FM-2017-732 (Me. Dist. Ct., Cumberland, Jan. 8, 2019).

"An abuse of discretion may be found where an appellant demonstrates that the decisionmaker exceeded the bounds of the reasonable choices available to it, considering the facts and circumstance of the particular case and the governing law." *Sager v. Town of Bowdoinham*, 2004 ME 40, ¶ 11, 845 A.2d 6567. An agency's interpretations of its own rules are given "considerable deference." *Friends of the Boundary Mts. v. Land Use Reg. Comm'n*, 2012 ME 53, ¶ 6, 40 A.3d 947. The court will not set aside an agency's interpretation of its own rules "unless the rule plainly compels a contrary result, or the rule interpretation is contrary to the governing statute." *Id.* The burden of proof is on Petitioner to prove that "no competent evidence supports the [agency's] decision and that the record compels a contrary conclusion." *Bischoff v. Bd. Of Trustees*, 661 A.2d 167, 170 (Me. 1995). A court will not render an agency's decision unsupported merely in the face of inconsistent evidence. *Id.* Thus, "[a]n administrative decision will be sustained if, on the basis of the entire record before it, the agency could have fairly and reasonably found the facts as it did." *Seider v. Bd. of Exam'rs of Psychologists*, 2000 ME 206, ¶ 9, 762 A.2d 551.

## III.     Discussion

The Department administers the MaineCare program, which is designed to provide "aid, medical or remedial care and services for medically indigent persons." 22 M.R.S. § 3173 (2019). The Department established eligibility requirements, as set forth in the MaineCare Eligibility Manual, 10-144 C.M.R. ch. 332 (2019). The rules require applicants to "use their assets to meet their needs before MaineCare will be available." *Id.* pt. 16, § 2. All "available assets" are used in determining eligibility, whereas "unavailable assets" are not. *Id.* An asset is "available" if it "has a value which is legally obtainable by the individual," and an asset is "unavailable" if it "has a value

which is legally unobtainable to the individual." *Id.* pt. 16, § 1. For assets that are "potentially available" applicants must "take action to make them available."[3] *Id.* pt. 16, § 2.

Petitioner argues on appeal that: (1) the hearing officer erred by finding that Mr. Santos failed to comply with Part 16, Section 2, requiring that he "take action to make [the Congress Street Property] available;" and (2) that the record lacks competent and substantial evidence to support a finding that filing a motion to lift the preliminary injunction would have been successful. (Pet'rs' Br. 5.)

*A. Error of Law*

Petitioner takes the position that property subject to a preliminary injunction is legally unobtainable, and that "take action" cannot reasonably be interpreted as requiring an applicant to take actions that are costly, unlikely to be successful, and against the advice of the applicant's attorney.[4] (Pet'rs' Br. 8.)

---

[3] Part 16, Section 1, of the MaineCare Eligibility Manual defines the following terms:
 ASSETS: Cash, other liquid resources or real or personal property.
 AVAILABLE ASSET: An asset that has a value which is legally obtainable by the individual. If there is a penalty for early or late withdrawal to get the asset, the available asset is the amount after the penalty is taken.
 OWNERSHIP: Power, authority or title to sell, exchange, convert or redeem any property . . . .
 NON-LIQUID ASSETS: Real or personal property that cannot be converted into cash on demand.
 REAL ESTATE AND OTHER NON-LIQUID ASSETS: If the owners have "joint tenancy", each owner has an equal interest in the total value of the property. If the owners are "tenants in common", each owner has a share in the property. Generally, each owner can sell that share without the consent of the other owners. If the terms of ownership prohibit sale of one owner's portion or the other owner(s) refuses to agree to sell, the real estate is excluded.
 UNAVAILABLE ASSET: An asset that has a value which is legally unobtainable to the individual.

[4] Petitioner asks the Court to accept a more liberal interpretation of Part 16, Section 2, that is, an applicant must "take all reasonable actions that are designed to result in the

The MaineCare Eligibility Manual does not define "potentially available asset" or provide any guidance with regards to the Department's expectation that an applicant "take action" to make potentially available assets, available. The hearing officer determined that the Congress Street Property, although subject to a preliminary injunction forbidding its sale, was a "potentially available asset." (R. 228.) The hearing officer interpreted Part 16, Section 2, as requiring applicants in Mr. Santos's position to file a motion to lift the preliminary injunction. (R. 228.) It appears that his failure to do so rendered the Congress Street Property an "available asset."[5] (R. 228.)

In light of the standard of review and the considerable amount of deference afforded to an agency's interpretation of its own rules, the Court concludes that the Department did not err in its application of the MaineCare eligibility rules.

### B. Findings Supported by Substantial Evidence in the Record

Petitioner next argues that the record does not contain sufficient evidence to support a finding that the Congress Street Property was an "available asset." (Pet'rs' Br. 9.) In fact, the record contained substantial evidence that filing a motion to lift the injunction would have been unsuccessful, deplete available resources, and possibly delay access to the property. (R. 301-02; Pet'rs' Br. 10.) The hearing officer heard testimony from, among others, David Turesky, Mrs. Santos's divorce attorney, and Hesper Schliederer-Hardy, Mr. Santos's divorce attorney. The hearing officer reiterated the following findings of fact:

---

availability of the asset" after considering the costs, feasibility, and likelihood of success. (Pet'rs' Br. 9.)

[5] It's unclear whether a pending attempt, or an unsuccessful attempt at making a potentially available asset, available, renders that asset "unavailable." The Court recognizes, however, that under the Department's application of the rule in this case, one's failure to at least attempt to "take action," automatically qualifies it as an "available asset."

The 158 congress Street property is owned by Claimant. It contains three (3) units which Claimant has rented over the years. Currently the property does not have any tenants. It is in need of repairs, but has not been condemned by the City of Portland. *See*, Claimant's testimony. Mrs. Santos believes she has an interest in the 158 Congress Street property as she has managed it over the years. She would not agree to its sale in order for Claimant to pay for his expenses in the nursing facility. *See*, Turesky's testimony. Although Claimant could have his divorce attorney file a motion requesting permission to sell the 158 Congress Street property, she would not recommend it. Her belief is that such a motion would cost thousands of dollars and would likely not be successful. *See*, Schleiderer-Hardy testimony.

(R. 223-4.) The hearing officer reviewed Mr. Santos's arguments that the Congress Street Property was subject to a preliminary injunction and "legally unobtainable" and stated as follows:

> [T]here is no dispute that Claimant does have the option of filing a motion. While his divorce attorney may advice against it, the Manual is clear that he must use assets that are "potentially" available to him . . . . I agree with the Department's argument in its closing that "[Attorney Schleiderer-Hardy's] testimony that it would cost 'thousands and thousands of dollars' for such a motion is likewise implausible overkill, designed to conceal the actual reason she disfavors a sale. A one page motion accompanied by a simple affidavit could tell the Court all it needs to know; Affiant needs to liquidate property, held in his name alone, in order to pay for critical nursing home costs." *See*, closing page 5.
>
> For the above reasons, the hearing officer agrees with the Department that the Congress Street property is an available asset and therefore, this matter is resolved in favor of the Department.

(R. 228.) The record supports a finding that filing a motion to lift the preliminary injunction was an available option, which may not have been entirely futile.[6] (R. 321.) Because "substantial evidence is evidence that a reasonable mind would accept as

---

[6] Petitioner argues that no testimony supported a finding that filing a motion to lift the preliminary injunction would have been as simple as a one-page motion accompanied by an affidavit. (Pet'rs' Br. 11-12.) However, the testimony confirmed that, pursuant to 19-A M.R.S. § 903(2)(2019), filing a motion to lift the statutory injunction was permitted. (*See* R. 321, 226, 228.) Although it's reasonable to assume that the Department would not demand pointless actions, the hearing officer was not required to support its decision with testimony suggesting that filing the motion would be simple or likely to be successful. *See* 10-144 C.M.R. ch. 332, pt. 16, § 2.

sufficient to support a conclusion," *Sproul v. Town of Boothbay Harbor*, 2000 ME 30, ¶ 8, 746 A.2d 368, the Court concludes that the Department's decision was supported by substantial evidence in the record.

## IV.    Conclusion

After a thorough review of the pleadings, the hearing transcript, the applicable law, and the final action, the Court finds that the Department's decision was supported by competent and substantial evidence in the record and finds no error with the Department's conclusions of law.   Accordingly, Petitioner's Rule 80C appeal is DENIED.

The Clerk is directed to incorporate this Order into the docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Dated: __2/26/2020__

_____
MaryGay Kennedy, Justice
Maine Superior Court

Entered on the Docket: 2/27/2020