2002 ME 37

Carol CONNOLLY

v.

**BOARD OF SOCIAL WORK LICENSURE**

Supreme Judicial Court of Maine.

Argued: Jan. 10, 2002.
Decided: Feb. 27, 2002.

Arthur J. Greif, Esq. (orally), Gilbert & Greif, P.A., Bangor, for plaintiff.

G. Steven Rowe, Attorney General, Judith M. Peters, Asst. Attorney General (orally), Augusta, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, and CALKINS, JJ.

RUDMAN, J.

[¶ 1] Carol Connolly appeals from the judgment entered in District Court (Augusta, *Horton, J.*) affirming the decision of the Board of Social Work Licensure finding her in violation of Board Rules Chapter 5, § 3(C)(7) and Chapter 5, § 3(C)(11)[1] for improperly revealing confidential client information on two occasions. Connolly argues, *inter alia,* that she was entitled to rely upon her client's consent, that on the first occasion no confidential information was disclosed, and on the second occasion her client's guardian had resigned. We agree in part and disagree in part and, therefore, vacate the court's judgment.

## I. CASE HISTORY

[¶ 2] Linda and Aaron Bernstein served as the guardians for a sixteen year old ward, who had escaped from an abusive family. The ward often lived with custodial families who provided "respite care." Over the course of several months the relationship between Mrs. Bernstein and her ward deteriorated as the ward directed increasing anger at her guardian. The ward was then residing in the home of Brian and Becky Murphy. At the insistence of Mrs. Bernstein, the ward agreed to meet with Carol Connolly for counselling. In her initial meeting with Bernstein, Connolly indicated that she wanted to meet with one of the ward's respite custodians, Mrs. Murphy. Mrs. Bernstein testified that she agreed to this but only so long as she was notified first and was present for such a meeting. Connolly asserts that Bernstein consented to this meeting.[2] Mrs. Murphy transported the ward to her counselling sessions and waited for the ward in the waiting room. After two counselling sessions with the ward, Connolly met with Mrs. Murphy without notifying Mrs. Bernstein. Connolly's treatment notes indicate, and Mrs. Murphy testified, that Connolly asked Mrs. Murphy questions about the ward's living arrangements and disclosed no confidential information.

[¶ 3] After two months of frustrated attempts to communicate and intervene in the life of their ward, Mr. and Mrs. Bernstein decided to resign as guardians; they wrote a general letter to community members and caregivers involved with the ward's care announcing their decision. With the support of the Bernsteins and the ward, the Murphys petitioned for guardianship of the ward. The Murphys sought letters from the ward's professional caregivers supporting their petition. Carol Connolly wrote a letter, addressed "To Whom It May Concern," indicating her counselling relationship with the ward, providing a brief assessment of the ward, and supporting the Murphys' petition.

1. The applicable subsections of the Board's Code, Chap. 5, § 3(C)(7) & (11) read as follows:

   (C) *Gross Negligence, Incompetency or Misconduct*

   Gross negligence, incompetency, or misconduct in the practice of professional social work includes, but is not limited to:

   . . . .

   (7) failing to maintain the confidentiality of client information, except as otherwise required by law;

   . . . .

   (11) engaging in conduct which violates the Code of Ethics adopted by the National Association of Social Workers in 1996 . . . .

2. The Board of Social Work Licensure Code of Ethics requires that a social worker obtain the consent of a client before releasing confidential client information. When the client is a minor the capacity to consent rests with the client's parents or legal guardians.

Connolly gave the letter to Mrs. Murphy to be filed with the Murphys' petition seeking guardianship of the ward.

[¶ 4] The Probate Court held a hearing on the Murphys' petition about two months after it was filed. The court appointed the Murphys guardians and accepted the resignation of the Bernsteins a month later. The Bernsteins then filed a complaint with the Board regarding Connolly's professional conduct.

[¶ 5] After a two day hearing, the Board found that Connolly twice violated the Board's rules, fined her a total of $500, and conditioned her license renewal with the requirement that she spend a year in professional consultation with another social worker. Connolly appealed to the District Court,[3] which affirmed the Board on both counts. Connolly then took this appeal from the District Court's judgment.

## II. DISCUSSION

[¶ 6] When as here the District Court, then the Administrative Court, acts in an appellate capacity, we review the decisions of administrative boards directly. *Seider v. Bd. of Exam. of Psychologists*, 2000 ME 206, ¶ 8, 762 A.2d 551, 555. We review the factual findings of administrative hearings to determine whether the board " 'abused its discretion, committed an error of law, or made findings not supported by the substantial evidence in the record.' " *Id.* (quoting *Davric Maine Corp. v. Maine Harness Racing Comm'n*, 1999 ME 99, ¶ 7, 732 A.2d 289, 293). We address each of these infractions in turn.

### A. Connolly's Conversation with Mrs. Murphy.

[¶ 7] Connolly asserts that irrespective of whether or not Mrs. Bernstein provided adequate consent, she revealed no confidential information in her meeting with Mrs. Murphy. The Board contends that the mere fact that Connolly revealed that she was counselling the ward is sufficient to find a breach of Board rules and its code of ethics. In the circumstances of this case, we find the Board's assertion to be unpersuasive.

[¶ 8] The custodian in this case, Mrs. Murphy, knew that the ward was in counselling with Connolly because she was driving the ward to the counselling sessions, at the *direction* of Mrs. Bernstein. Thus, the Board's conclusion that Connolly violated the ward's confidentiality by disclosing the existence of counselling defies logic. Mrs. Murphy testified at Connolly's hearing. When asked on direct examination about what Connolly had asked or told her, she responded that the conversation focused on the ward's life at home: "[B]asically it was how did we feel [the ward] was doing in our home, did we have any concerns with behavior or did we see anything that we had concerns about, how did [the ward] become [sic] into our home, did we know about her natural mother." Connolly's treatment notes support Mrs. Murphy's testimony.

[¶ 9] Neither Murphy nor Connolly was asked what confidential information Connolly revealed to Murphy. The Board argues that the one-hour session between Connolly and Murphy compels a conclusion that Connolly revealed confidential information. The Board, however, must have substantial evidence on the record upon which it may base its findings. Based on the length of the meeting between Connolly and Murphy, the Board's conclusion that confidential information was disclosed is speculative. The Board's finding that

---

**3.** The District Court has jurisdiction to hear appeals from licensing boards and commissions. 4 M.R.S.A. § 152(10) (Supp.2001); M.R. Civ. P. 80C.

Connolly disclosed confidential client information is not supported by any evidence, let alone substantial evidence.

### B. Connolly's Letter Addressed "To Whom It May Concern."

■ [¶ 10] Connolly argues, *inter alia,* that she did not breach confidentiality because the Bernsteins had effectively resigned as guardians and, therefore, there was no one who could consent other than the ward, and she had provided her consent.[4] The Maine Probate Code states that a guardianship does not terminate "until it has been approved by the court." 18–A M.R.S.A. § 5–210 (1998). Notwithstanding the actions the Bernsteins took to resign as guardians, they retained the authority, responsibility and liability of legal guardians until the Probate Court issued its orders appointing the Murphys as guardians and accepting the Bernsteins' final account.

[¶ 11] Connolly also argues that the ward's mental condition was at issue thereby allowing her to inform the court of her view of the ward's needs. *See* 32 M.R.S.A. § 7005 (1999). This statutory exception to the social worker-client privilege, however, only operates when the social worker "may be required to testify in any civil or criminal action, suit, or proceeding at law...."

*Id.* Connolly was not compelled by any court order to testify.

[¶ 12] Even if the Bernsteins' resignation was effective or Connolly had been compelled to testify, her letter is too broadly published to qualify as a limited disclosure allowed by the statute and professional rules for exceptional circumstances. Connolly's letter was addressed "To Whom It May Concern," and given to a third party, Mrs. Murphy. The professional rules require that any disclosure must be limited to the greatest extent possible, and Connolly's letter goes well beyond such a limited disclosure. Substantial evidence in the record supports the Board's finding that, by publishing the "To Whom It May Concern" letter, Connolly violated Board Rules.

The entry is:

Judgment is vacated and remanded to the District Court for remand to the Board of Social Work Licensure for further proceedings consistent with this opinion.

---

4. Connolly also argues that under the "mature minor" exception the ward's consent was sufficient. Connolly's testimony before the Board does not support her argument, and suggests that she did not rely on the maturity of the ward in deciding to write the letter. We note that we have only applied this exception in one case which presented exceptional circumstances. *In re Swan,* 569 A.2d 1202 (Me.1990).