2003 ME 123

**Anne S. HANNUM**

v.

**BOARD OF ENVIRONMENTAL PROTECTION et al.**

Supreme Judicial Court of Maine.

Argued: June 11, 2003.
Decided: Oct. 15, 2003.

County, *Jabar, J.*) affirming a decision of the Board of Environmental Protection in which the Board denied Hannum's application for a permit to construct a dock on her property in Bar Harbor on Long Cove. Hannum argues that the Board (1) applied regulatory standards that were unconstitutionally vague and represented an impermissible delegation of legislative authority, and (2) made findings not supported by facts in the record. Because we conclude that specific factual findings relied upon by the Board in reaching its conclusions were unsupported by evidence in the record, we vacate the Superior Court's judgment and remand for reconsideration by the Board.

Edmond J. Bearor (orally), Timothy A. Pease, Rudman & Winchell, L.L.C., Bangor, for plaintiff.

G. Steven Rowe, Attorney General (orally), Lucinda E. White, Asst. Attorney General, Margaret B. McCloskey, Asst. Attorney General, Augusta, for BEP, defendant.

James S. Nixon (orally), Gross Minsky & Mogul, P.A., Bangor, for Friends of Acadia, defendants.

Douglas B. Chapman (orally), Eileen McGlinchey Fahey, Fenton, Chapman & Kane, P.A., Bar Harbor, for Millicent Guptill Higgins and Ruth Higgins Horsman, defendants.

Panel: SAUFLEY, C.J., and CLIFFORD, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

SAUFLEY, C.J.

[¶ 1] Anne S. Hannum, individually and in her capacity as trustee of the Anne Stroud Hannum Trust, appeals from the judgment of the Superior Court (Hancock

## I. INTRODUCTION

### A. Statutes and Rules

[¶ 2] Before building the dock, Hannum was required, among other things, to obtain a permit pursuant to the Natural Resources Protection Act, 38 M.R.S.A. §§ 480–A to 480–Z (2001 & Supp.2002). The Act is designed to address a legislatively identified need to "prevent the degradation of and encourage the enhancement of" critical water-related state resources. 38 M.R.S.A. § 480–A (2001). One of the Legislature's key findings in enacting the Natural Resources Protection Act was "that the cumulative effect of frequent minor alterations and occasional major alterations of these [natural] resources poses a substantial threat to the environment and economy of the State and its quality of life." *Id.*

[¶ 3] The Act requires a permit from the Department of Environmental Protection for any construction, repair, or alteration of any permanent structure "if the activity is located in, on or over any protected natural resource." 38 M.R.S.A. § 480–

C(1) & (2)(D) (2001 & Supp.2002).[1] The Act authorizes the Board of Environmental Protection to assume jurisdiction over the approval or denial of a permit application in a variety of circumstances, including upon request by the Commissioner of the Department of Environmental Protection if the application "generate[s] substantial public interest." 38 M.R.S.A. §§ 341–D(2)(D), 344(2–A)(A) (2001).

[¶ 4] The Act establishes nine standards that any applicant for a permit must meet before a permit can be granted. 38 M.R.S.A. § 480–D (2001 & Supp.2002). The standards in controversy in this case are those listed in section 480–D(1), requiring an applicant to demonstrate that there will be no unreasonable interference with existing scenic, aesthetic, recreational, or navigational uses, and section 480–D(3), requiring an applicant to demonstrate that a project will cause no unreasonable harm to significant wildlife habitat, aquatic habitat, marine fisheries, or other aquatic life.[2] *Id.* In evaluating compliance with section 480–D(3), the Department may consider steps to mitigate or minimize the impact of a proposed activity. 38 M.R.S.A. § 480–D(3)(A) & (B) (Supp.2002).

## B. Case History

[¶ 5] Anne S. Hannum is a trustee and beneficiary of a private trust that owns a sixty-two-acre parcel of property in Bar Harbor. The land includes twelve hundred feet of frontage on Long Cove. The abutting property to the west of the Hannum property contains a seasonal residence with a dock. Several seasonal cottages, without docks, are located easterly of the Hannum property. One other dock is visible and located approximately four hundred yards from the site of Hannum's proposed dock.

[¶ 6] In 1999, Hannum applied to the DEP for a permit to build a ninety-foot-long and five-foot-wide dock extending from her property into Long Cove. The dock was projected to extend to the low water mark, with a seasonal ramp and float extending from the dock to permit use of boats tied to the float at all tide levels. Hannum received approval to construct the dock from the U.S. Army Corps of Engineers, the U.S. Environmental Protection Agency, the U.S. Fish and Wildlife Service, the National Marine Fishery Service, and the Maine Department of Inland Fisheries and Wildlife.

[¶ 7] Because of the significant public interest generated by Hannum's application, the DEP recommended that the Board assume jurisdiction over the application and hold a public hearing. *See* 38 M.R.S.A. §§ 341–D(2)(D), 344(2–A)(A).

1. The term "protected natural resource" includes coastal wetlands, 38 M.R.S.A. § 480–B(8) (2001), with coastal wetlands defined to mean "all tidal and subtidal lands," *id.* § 480–B(2). The term "permanent structure" includes piers and docks. *Id.* § 480–B(7).

2. The Rules promulgated by the Board provide that a permit may be denied unless the applicant demonstrates that the activity will not have an unreasonable impact on the wetland. CODE ME. R. 06–096–310 § 5(D)(1) (2002). The rule specifies that in making the "unreasonable impact" determination, "[c]umulative effects of frequent minor alterations on the wetland" must be considered. *Id.* The rules list eight nonexclusive factors to be considered in determining "unreasonable impact":

> the degree of harm or benefit to the resource; the frequency of similar impacts; the duration of the activity and ability of the resource to recover; the proximity of the activity to protected or highly developed areas; traditional uses; the ability of the activity to perform as intended; public health or safety concerns addressed by the activity; and the type and degree of benefit from the activity (public, commercial or personal).

*Id.* § 5(D)(2).

The Board began the hearing on June 15, 2000, and reconvened the hearing on July 6, 2000. The Board received a significant volume of testimony and evidence in support of, and in opposition to, the application. It considered the application at a March 2001 meeting, after receiving the DEP's staff recommendation that the application be approved. The Board voted to deny the requested permit. A written denial issued in May 2001.

[¶ 8] At the heart of the Board's decision to deny the application was its finding

> that the proposed pier, by itself, might not have an unreasonable adverse impact on marine life. However, the cumulative impact of this large pier, together with the increased boat traffic from this *and other piers which would likely follow if this pier were approved,* both on the Applicant's property and on two neighboring properties subject to easements which do allow docks, poses a substantial threat to do unreasonable and irreversible harm to the aquatic life in this special cove.

(Emphasis added.) The Board's order went on to find

> that permanent piers will necessarily increase boat traffic in the quiet and relatively undeveloped cove, which will disturb the existing tern and seal colonies, both of which are very unusual, if not rare in Maine. The fact that other boat traffic unrelated to the applicant may also come into the cove does not preclude the Board's finding that the probable cumulative impacts of this project on

significant wildlife and aquatic habitat are unacceptable.

With these findings stated, the Board concluded that "the project would have an unreasonable adverse impact on significant wildlife habitat, aquatic habitat, and other aquatic life." Relying on this finding, the Board also concluded that "the project will unreasonably interfere with existing scenic and aesthetic uses pertaining to the viewing of wildlife."

[¶ 9] Beyond these findings, the Board also based its denial of the application on a conclusion that "[t]he proposed activity does not meet the avoidance and minimal alteration standards of the Wetland Protection Rules, Chapter 310, Sections 5(A) and 5(B), in that the applicant has reasonable and practicable alternatives to constructing a permanent pier."[3] The Board's order did not specify what the practicable alternatives might be.[4]

[¶ 10] Hannum appealed the Board's denial of her permit application to the Superior Court, which affirmed the Board's decision. This appeal followed.

## II. DISCUSSION

[¶ 11] When the Superior Court acts as an intermediate appellate court, reviewing a decision of a state or local administrative agency, we review directly the decision of the administrative agency. *See Connolly v. Bd. of Soc. Work Licensure,* 2002 ME 37, ¶ 6, 791 A.2d 125, 127. Accordingly, we review directly the decision of the Board of Environmental Pro-

---

3. The Rule prohibits any activity that would cause a loss of a wetland area if there is a practicable alternative to the project that would be less damaging to the environment. CODE ME. R. 06–096–310 § 5(A). "Practicable" is defined as "[a]vailable and feasible considering cost, existing technology and logistics based on the overall purpose of the project." *Id.* § 3(R).

4. Although opponents of the project indicated that Hannum might use public or private landing facilities between four and twelve miles away, or that she might utilize a "three point pulley system," very little evidence was presented on this issue.

tection to determine· if its findings and conclusions are supported by evidence in the record, and if the decision is affected by any abuse of discretion or error of law. *Id.; see also Downeast Energy Corp. v. Fund Ins. Review Bd.,* 2000 ME 151, ¶ 13, 756 A.2d 948, 951.

[¶ 12] Hannum did have the burden of proving that her pier project would meet the standards addressed by the Natural Resources Protection Act. 38 M.R.S.A. § 480–D (requiring an applicant to demonstrate that the proposed activity will not "unreasonably interfere" with or cause "unreasonable harm" to the natural resources protected by the Act); *Murphy v. Bd. of Envtl. Prot.,* 615 A.2d 255, 258 (Me.1992) (requiring a permit applicant to demonstrate that his proposed activity complied with statutory criteria set forth in 38 M.R.S.A. § 480–D). However, the Board could not simply determine that Hannum's burden of proof was not met. By statute, the Board had an affirmative obligation to set out in a decision its reasons for the denial of the application and to state its reasons with sufficient specificity to permit understanding and meaningful appellate review. 5 M.R.S.A. § 9061 (2002); 1 M.R.S.A. § 407(1) (1989); *Christian Fellowship & Renewal Ctr. v. Town of Limington,* 2001 ME 16, ¶ 15, 769 A.2d 834, 839 (stating that "there cannot be meaningful judicial review of agency decisions without [adequate·] findings of fact").

[¶ 13] In this case, the Board fulfilled its responsibility to detail its findings regarding the effect on natural wildlife. In so doing, it found that Hannum's "proposed pier, by itself, might not have an unreasonable adverse impact on marine life." Nonetheless, it concluded that the cumula-tive impact of intrusions, from both boats and other docks, would combine to result in an unreasonable impact on the local marine life.

[¶ 14] The Board did not, however, limit its analysis of cumulative impacts to the facts found in the record, such as the impact of the Hannum dock, other existing docks, and the reasonably anticipatable boat traffic attendant to those docks. Instead, the Board found that there would be an adverse impact from "other piers [that] *would likely follow* if this pier were approved." (Emphasis added.) It then built upon that unsupported speculation regarding the future docks and concluded that the cumulative impacts of increased boat traffic prospectively generated by both Hannum's dock and *other docks which would likely follow,* could, at some time in the future, have an adverse impact on the marine environment.[5]

[¶ 15] There is simply no evidence in the record before us that a permit for the Hannum dock would create a likelihood that other docks would follow. Indeed, the DEP would have control over future permit applications and could deny those applications if proposed docks would add to the incremental effect on wildlife so as to create the cumulative impact that is the center of the Board's concern here. Nor was there evidence that any of the properties in the vicinity of Hannum's property that do not already have a dock have applied or are considering applying for a permit to construct a dock now or at any time in the future. Further, there is no evidence that the environmental impact of future dock construction efforts could not be minimized, and there is no evidence

---

5. The Board's findings indicate that the property immediately to the west of Hannum's property already has a dock on it. Therefore, presumably, the focus of the Board's concern was the prospect that the seasonal cottages easterly of Hannum's property might have docks built at some time in the future.

that there would not be some reasonable alternative available for construction of any of those docks, if application is made to construct them sometime in the future.[6]

[¶ 16] A finding of cumulative impact will often require reasonable extrapolation from present facts, but such a finding must have as its source actual facts from which to anticipate future impact. No such source exists in this record regarding the possibility that more docks would be built if the Hannum dock were approved. Although the Board could reasonably conclude that the Hannum dock itself would generate additional boat traffic, there was no evidence that the granting of this permit could reasonably be anticipated to result in the building of *more docks.*

[¶ 17] In sum, the finding of fact speculating that future development of other docks could have cumulative impacts causing Hannum's project to have an unreasonable impact on the environment at some unknown future time, even if it does not have such an impact now, is unsupported by evidence in the record and cannot support the portions of the Board's decision that rely on that finding. That finding, directly or incorporated by reference, is included in each of the Board's negative determinations regarding Hannum's project.[7] Because we cannot ascertain from the Board's decision whether the Board would have reached a different conclusion in the absence of that finding, the decision denying Hannum's application for construction of a dock must be vacated and remanded to the Board for a decision based on the evidence without reliance on speculation about future cumulative impacts of events that have not yet occurred and may never occur.

[¶ 18] In addition to Hannum's challenge regarding the speculative nature of some of the Board's findings of fact, Hannum also raises constitutional challenges, arguing that the standards applied by the Board are void for vagueness. *See Kosalka v. Town of Georgetown,* 2000 ME 106, ¶ 17, 752 A.2d 183, 187. The law is well established that when reviewing a constitutional challenge to a statute or a regulation, we will avoid addressing constitutional issues if the case can be resolved by addressing nonconstitutional issues. *Town of Burlington v. Hosp. Admin. Dist. No. 1,* 2001 ME 59, ¶ 19, 769 A.2d 857, 864; *Your Home, Inc. v. City of Portland,* 432 A.2d 1250, 1257 (Me.1981). Here, because we determine that key findings of the Board are unsupported by the evidence, we need not reach, and do not address, the constitutional issues raised by Hannum.

The entry is:

Judgment vacated. Remanded for further proceedings consistent with this opinion.

---

6. Fact-finders must rely on evidence, not speculation, in fact-finding, and we must vacate decisions where fact-finding was unsupported by evidence. *See Connolly v. Bd. of Soc. Work Licensure,* 2002 ME 37, ¶ 9, 791 A.2d 125, 127–28 (vacating an administrative agency conclusion that was "speculative" and "not supported by any evidence").

7. The Board also found that Hannum had failed to prove the absence of reasonable alternatives to the dock. *See* CODE ME. R. 06–096–310 § 5(A). However, the conclusion on that point included no factual findings regarding Hannum's options and is insufficient, standing alone, to support the denial of the permit. Upon remand, the Board may require Hannum to address the alternatives once again.