STATE OF MAINE                                    SUPERIOR COURT
HANCOCK, SS.                                       CIVIL ACTION
                                                  DOCKET NO.: AP-04-08

ANNE HANNUM,

        Petitioner

        V.                                        D E C I S I O N

MAINE BOARD OF ENVIRONMENTAL PROTECTION,

        Defendant

    and

MILLICENT GUPTILL-HIGGINS, ET AL.,

        Parties-In-Interest


        Before this court is the petitioner, Anne Hannum's (Hannum) 80C Appeal which
seeks reversal of the Maine Board of Environmental Protection (BEP) denial of her
application for a permit under the Natural Resources Protection Act (NRPA).
Edward Bearor, Esq. appeared on behalf of the petitioner Hannum, Margaret Bensinger,
Assistant Attorney General appeared on behalf of the Maine Board of Environmental
Protection, James Nixon, Esq. appeared on behalf of the Friends Of Acadia, and Douglas
Chapman, Esq. appeared on behalf of the parties-in-interest, Higgins and Horsman.

                              Procedural History

        On November 1, 1999, Hannum filed a permit application with NRAP seeking
approval to construct a 90-foot long and 5-foot wide private dock on her 62-acre parcel
that has 1200 feet of frontage on the Maine coast. A public hearing was held on June 15,
2000 and July 6, 2000. BEP granted intervenor status to Ruth Higgins Horsman,
Millicent Higgins, Thomas Watt, and the Friends Of Acadia. The record contained
objections to the permit in the form of testimony given by Steve Pelletier, wildlife
biologist, Dr. John Anderson, an ornithologist, Thomas Schaffer, Dr. James Gilbert, a

wildlife biologist, Patrick Keating, and Daniel Chalmers. The board also received a letter from Leslie Cowperthwaite. The record also indicates that the Army Corp. of Engineers determined that the project would not adversely impact any essential fish habitat and that the project was eligible for approval. The United States Environmental Protection Agency, the United States Fish and Wildlife Service, and the National Marine Fisheries Service all reviewed the proposed project and did not object to it. The Maine Department of Inland Fisheries and Wildlife also approved the project.

On May 21, 2001, BEP denied the application. This decision was appealed to the Maine Superior Court; the BEP decision was upheld. Hannum then appealed to the Maine Supreme Judicial Court. On October 15, 2003, the Maine Supreme Judicial Court vacated the superior court's decision and remanded the case back to BEP for further proceedings because the factual findings relied upon by the BEP were not supported by evidence in the record.

Upon the remand, BEP decided not to reopen the record to allow the submission of additional evidence. The Board made new findings on the evidence that existed in the record as of May 11, 2001. On June 3, 2004, BEP once again denied Hannum's permit stating three reasons for the denial. These reasons are set out in paragraphs A, D, and J of their decision.

Hannum filed this 80C Appeal of this most recent denial by BEP.

## Discussion

The starting point of any analysis in this case begins with Hannum's common law right to wharf out from her coastal real estate. This common law right is subject to reasonable regulation. The regulation in question is the NRPA. The Maine Board of Environmental Protection is responsible for administering the NRPA. This case came before the BEP for a second time following the Maine Supreme Judicial Court's remand. The BEP did not receive any additional evidence when considering this matter on remand. The three findings, which justify their denial of the application, are set out in the following findings contained on page 12 of the decision:

(A) The proposed activity would unreasonably interfere with existing scenic and aesthetic uses in that the project would cause and unreasonable adverse impact to

aquatic life and the aquatic habitat supporting seals and terns in the cove and would unreasonably interfere with the existing public viewing of those wildlife species;

(D) The proposed activity would unreasonably harm aquatic habitat and other aquatic life in that the permanent pier would increase boat traffic in the cove, which will disturb the existing tern and seal colonies;and

(J) The proposed activity does not meet the avoidance, minimal alteration, and no unreasonable impact requirements articulated in the Wetland Protection Rules, chapter 310, sections 5A, 5B, and 5D, in that the applicant has reasonable and practicable alternatives to constructing a permanent pier; and the construction and use of the dock would likely disturb an endangered species.

### A. Scenic and Aesthetic Uses
### D. Increased Boat Traffic

The court is discussing these two findings together because ultimately they focus on the same factor, increased boat traffic. In the finding contained in (A) , the BEP focuses on interference with existing scenic and aesthetic uses by indicating that the project would have an unreasonable adverse impact on aquatic life and habitat; therefore there wouldn't be any aquatic life or habitat to view. The project itself would not directly impact the scenic or aesthetic uses of the area, however; they state that the problem is the harm to aquatic life and habitat caused by the increased boat traffic. The findings in paragraphs (A) and (D) focus on the consequences on the increased boat activity.

BEP refers to complaints made by Ms. Cowperthwaite and some of the experts presented by the intervenors whereby they indicate that increased boat activity will create problems for the wildlife in the area. However, the record does not attempt to quantify the amount of boat traffic or relate the amount of boat traffic emanating from the pier to other boat traffic in the area. This concern of increased boat traffic in the area may be a legitimate concern, but preventing a landowner from putting a dock into the water does not directly address the problem. BEP has no control over the boat traffic in Long Cove,

3

whether from Hannum's dock or other docks. The request is not for a commercial dock, but for a dock anticipated to be used during the short summer months by a woman and her family. All of the witnesses who testified objecting to the project emphasized the impact of increased boat traffic in the area and how that would affect the habitat in the area. They make a gigantic leap without any supporting evidence as to how one dock will increase boat traffic to such an extent that it will damage aquatic life in the area. This same unsupported conclusion is also present in the next paragraph (J). It also focuses on the problem of increased boat traffic.

### (J) Alternatives

This court finds and concludes that the evidence in this record does not support BEP's finding that there was a practicable alternative. Once again the issue seems to be increased boat traffic. Paragraphs (A), (D), and (J) all focus on the same anticipated problem. In its findings, the BEP spends a great deal of time talking about the various alternatives that Hannum has with regards to getting access to the Maine coast. They talk about Ms. Hannum using other docks as well as using a 3-point pulley system just off her shoreline. This analysis demonstrates the problem with BEP's thinking throughout its decision. It is not the dock that is the problem; it is the use of the boats that constitutes the problem. If there were frequent boats in the vicinity of Long Cove from other areas, BEP would have no way of preventing this boat traffic. If BEP is concerned about the use of boats in the area, then why are they stating that the 3-point pulley system is a good alternative? The 3-point pulley system assumes that there will still be three boats available to Ms. Hannum from her property. What would prevent her from using the boats as much as she would use them if she had her own dock? Boat traffic is boat traffic whether it results from a landowner mooring her boats on a pulley system or mooring her boats to a dock. The concern for the aquatic life, whether endangered or not, is a legitimate concern for the intervenors, but the record does not support the finding that Hannum's use of her dock for 60-90 days each summer will cause a detrimental impact upon the aquatic life in the area or the viewing of said aquatic life. The record does not contain any evidence explaining how the Hannum wharf will damage the interests in

4

question any more than boat traffic from other docks in the area or even boat traffic from Hannum's property if she decided to use a 3-point pulley system.

## Conclusion

The potential use of the dock by Hannum and her family and the impact it will have upon Long Cove is speculative. Once again a finding that the dock in question would result in increased boat traffic and therefore result in damage to aquatic life and habitat requires "reasonable extrapolation" from present facts. BEP's finding in this case suffers from the same short comings that were discussed in Hannum v. Board of Environmental Protection, 832 A.2d 765 (Me. 2003). The Hannum court in its decision stated the following:

> "Although the Board could reasonably conclude that the Hannum dock itself would generate additional boat traffic, there was no evidence that the granting of this permit would reasonably be anticipated to result in the building of more docks." At 770.

Even the Hannum court found that the BEP could reasonably conclude that the dock would result in additional boat traffic; however, it did not sustain BEP's decision based on their finding that the Board could, "reasonably conclude" that the dock would generate additional boat traffic. The record fails to make the connection between the additional boat traffic from the Hannum dock and the harm to aquatic life and habitat. There is no evidence as to how the increased boat traffic from the Hannum dock would harm aquatic life other than general statements made by the experts presented by the intervenors in this case indicating that any increased boat traffic would harm the aquatic life and habitat.

For reasons stated above, this court finds and concludes that the decision of BEP should hereby be reversed and the BEP be ordered to grant Hannum's permit.

DATED: 2-17-05

Joseph M. Jabar
Justice, Maine Superior Court

**FILED &
ENTERED**

FEB 22 2005

**SUPERIOR COURT
HANCOCK COUNTY**

5