

STATE OF MAINE
CUMBERLAND, SS.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CUMSC-AP-15-21

CEDARS NURSING CARE CENTER )
d/b/a THE CEDARS, )
)
)
Petitioner, )
)
v. )
)
MAINE DEPARTMENT OF HEALTH )
AND HUMAN SERVICES, )
)
Respondent, )
)
and )
)
THE AROOSTOOK MEDICAL CENTER/ )
AROOSTOOK HEALTH CENTER, )
)
Intervenor. )

ORDER ON RULE 80C APPEAL

STATE OF MAINE
Cumberland ss Clerk's Office

JUL 1 1 2016

RECEIVED

Before the court is Cedars Nursing Care Center d/b/a The Cedars' ("Cedars") petition for review of final agency action by the Maine Department of Health and Human Services ("DHHS" or the "Department") pursuant to the Maine Administrative Procedures Act (the "APA"), 5 M.R.S. § 11001 *et seq.*, and Maine Rule of Civil Procedure 80C. Based on the following, DHHS's decision denying Cedars' request for informal review is reversed and remanded for further consideration.

## I.    Background

DHHS is a state agency responsible for implementing Maine's Medicaid program, known as MaineCare. 10-144 C.M.R. ch. 101 §§ 1.01-1.02, 10 (2014). Pursuant to its duty, DHHS reimburses nursing facilities for services provided to MaineCare members based on a rate established by DHHS. 10-144 C.M.R. ch. 101 § 37 (2014). DHHS classifies nursing facility

providers into one of three Peer Groups for purposes of MaineCare reimbursement. 10-144 C.M.R. ch. 101 § 86 (2014); (R. Vol. 1, 204-207.) Cedars operates a nursing facility in Portland, Maine. (R. Vol. 1, 155.) Cedars is classified as a Peer Group II facility. (*Id.* at 207.) Aroostook Health Center ("AHC") operates a nursing facility in Mars Hill, Maine. (*Id.* at 8.) Before 2015, AHC was also classified as a Peer Group II facility. (*Id.* at 207.)

In April 2013, AHC requested a change in its status from a free standing nursing facility (Peer Group II) to a hospital-based nursing facility (Peer Group III). (*Id.* at 1, 144); 10-144 C.M.R. ch. 101 § 86. On January 8, 2015, DHHS issued a Final Informal Review Decision informing AHC that it would be reclassified as a hospital-affiliated nursing facility (Peer Group III) and reimbursed at a higher rate (the "AHC Decision"). (R. Vol. 1, 137-39, 144.) Cedars did not receive notice of the AHC Decision. (*Id.* at 139.) Sometime thereafter, Cedars made a Freedom of Access request to DHHS regarding the AHC Decision. (*Id.* at 143.) DHHS provided Cedars with a copy of the AHC Decision on May 8, 2015. (*Id.*)

On June 12, 2015, Cedars submitted written request for informal review and/or administrative hearing to DHHS regarding the AHC Decision. (*Id.* at 143-44.) In its June 12, 2015 request, Cedars asserted that AHC did not meet the definition of a "hospital-affiliated nursing facility" to be included in Peer Group III and should remain classified as a free standing nursing facility as part of Peer Group II. (*Id.* at 144.) Cedars asserted that it intended to put forth evidence showing how AHC's classification as a Peer Group III facility violated DHHS's rules and would "directly and adversely" impact Cedars' MaineCare reimbursement. (*Id.*)

On June 24, 2015, DHHS issued a letter to Cedars denying its request for informal review. (*Id.* at 159-60.) In its letter, DHHS concluded the following: (1) Cedars' request for informal review was untimely under both § 140.1 and § 1.21-1 of the MaineCare Benefits

Manual; (2) Cedars was not entitled to an informal review under § 140.1 of the MaineCare Benefits Manual because Cedars was not the nursing facility to which the AHC Decision was issued; and (3) Cedars was not a entitled to an informal review under § 1.21-1 of the MaineCare Benefits Manual because it was not aggrieved by the AHC Decision. (*Id.*)

Cedars filed a Rule 80C petition appealing the AHC Decision on June 16, 2015. Following DHHS's denial of its request for informal review, Cedars moved to amend its petition on July 14, 2015, to address both the AHC Decision and the June 24, 2015 denial. DHHS moved to dismiss Cedars' petition on July 17, 2015. The court granted Cedars' motion to amend its petition and denied DHHS motion to dismiss on August 24, 2015. On September 3, 2015, AHC moved to intervene in this action, which the court granted.

The administrative record was filed with the court on September 25, 2015. DHHS further supplemented the record on October 13, 2015. Cedars filed a motion to take additional evidence on October 5, 2015, which DHHS and AHC both opposed. The court denied Cedars motion to take additional evidence on February 29, 2016. In its order, the court ruled that the only issue properly before the court was whether DHHS erred in denying Cedars' June 12, 2015 request for informal review. The court stated that the AHC Decision was not a final agency action appealable by Cedars under the APA, because further agency review was available to Cedars. *See* 5 M.R.S. §§ 8002(4), 11001(1). Indeed, Cedars' June 12, 2015 request sought further agency review of the AHC Decision.

Cedars field its Rule 80C brief on April 6, 2016. AHC and DHHS filed their responses on May 6, 2016. Cedars filed a reply on May 20, 2016.

## II.    Standard of Review

When acting in an appellate capacity pursuant to Rule 80C and the APA, the court reviews the agency's decision for abuse of discretion, error of law, or findings not supported by the evidence. *Guar. Tr. Life Ins. Co. v. Superintendent of Ins.*, 2013 ME 102, ¶ 16, 82 A.3d 121. The standard for review of final agency action is provided by § 11007 of the APA. M.R. Civ. P. 80C(c). The court may reverse or modify any agency determination if the agency's findings, inferences, conclusions, or decisions: (1) violate constitutional or statutory provisions, (2) exceed the agency's statutory authority, (3) are made upon unlawful procedure, (4) are affected by bias or error of law, (5) are unsupported by substantial evidence in the record, or (6) are arbitrary, capricious, or an abuse of discretion. 5 M.R.S. § 11007(4)(C). The court may also remand the case for further proceedings, findings of fact or conclusions of law, or direct the agency to hold such proceedings or take such action as the court deems necessary. *Id.* § 11007(4)(B).

An agency's interpretations of its own rules are given "considerable deference." *Friends of the Boundary Mts. v. Land Use Regulation Comm'n*, 2012 ME 53, ¶ 6, 40 A.3d 947. The court will not set aside an agency's interpretation of its own rules "unless the rule plainly compels a contrary result, or the rule interpretation is contrary to the governing statute." *Id.*

An agency's findings of fact must be supported by substantial evidence in the record and cannot be based on unsupported speculation. *Hannum v. Bd. of Envtl. Prot.,* 2003 ME 123, ¶ 15 n.6, 832 A.2d 765. To be supported by substantial evidence, the agency's findings of fact must be supported by "such relevant evidence as a reasonable mind might accept as adequate to support the resultant conclusion." *Sinclair Builders, Inc. v. Unemployment Ins. Comm'n*, 2013 ME 76, ¶ 9, 73 A.3d 1061 (internal quotation marks omitted). The court will not substitute its own judgment for that of the agency merely because the record could support more than one

4

conclusion. *Abrahamson v. Sec'y of State*, 584 A.2d 668, 670 (Me. 1991). Similarly, an agency's decision is arbitrary and capricious if it is "unreasonable, has no rational factual basis justifying the conclusion or lacks substantial support in the evidence." *Cent. Me. Power Co. v. Waterville Urban Renewal Auth.*, 281 A.2d 233, 242 (Me. 1971).

III.   **Analysis**

Cedars asserts that DHHS erred in denying its June 12, 2015 request for informal review pursuant to § 1.21-1 of the MaineCare Benefits Manual.[1] (Pet. Br. 1.) Section 1.21-1 of the MaineCare Benefits Manual provides, in relevant part:

> Any provider who is aggrieved by a Departmental action made pursuant to this Manual … has sixty (60) calendar days from the date of receipt of that decision, to request an informal review. The request for an informal review must be in writing, to the Director of MaineCare Services or other specified Departmental official. This review will be conducted by the Director of MaineCare Services, or other designated Department representative who was not involved in the decision under review. The informal review will consist solely of a review of documents in the Department's possession including submitted materials/documentation and, if deemed necessary by the Department, it may include a personal meeting with the provider to obtain clarification of the materials. Issues that are not raised by the provider, individual, or entity through the written request for an informal review or the submission of additional materials for consideration prior to the informal review are waived in subsequent appeal proceedings. The request for informal review may not be amended to add further issues.

10-144 C.M.R. ch. 101 § 1.21-1 (2014).

Cedars argues that DHHS erred in finding (1) that its June 12, 2015 request was untimely and (2) that Cedars was not an aggrieved party under § 1.21-1. (Pet. Br. 5.) Cedars also argues that DHHS erred in adopting the definition of "aggrieved" used by the courts for the purposes of the APA as its definition of "aggrieved" for purposes of § 1-21.1. (*Id.* at 8-9.)

---

[1] Cedars does not contest DHHS's determination that Cedars was not entitled to an informal review pursuant to § 140.1 of the MaineCare Benefits Manual. (Pet. Br. 5 n.4.) Cedars only contests DHHS's decisions regarding § 1.21-1. (*Id.*)

A.    Timeliness of Cedars' June 12, 2015 Request for Informal Review

In its June 24, 2015 letter, DHHS asserts that Cedars' June 12, 2015 request was filed after the sixty-day deadline for seeking informal review of the AHC Decision issued on January 8, 2015. (R. Vol. 1, 159.) Cedars argues that it did not receive the AHC Decision until its Freedom of Access request was fulfilled on May 8, 2015. (Pet. Br. 6); *see* (R. Vol. 1, 143.) Cedars argues that its June 12, 2015 letter requesting informal review of the AHC Decision was timely under § 1.21-1 because the request was sent to DHHS within sixty days "from the date of receipt of that decision." (Pet. Br. 6.) In its brief, DHHS concedes that Cedars' June 12, 2015 request for informal review was timely under § 1.21-1. (Resp. Br. 6.) Thus, DHHS concedes that its June 24, 2015 determination that Cedars request was untimely was an error of law.[2]

B.    DHHS's Adoption of the APA Definition of "Aggrieved"

DHHS concedes in its response brief that nursing facilities have the right under § 1.21-1 to challenge decisions issued to other nursing facilities if they are aggrieved by the decision. (*Id.* at 7.) In its June 24, 2015 letter, DHHS stated that Cedars had no legal standing to seek informal review under § 1.21-1 because it was not aggrieved by the AHC Decision. (R. Vol. 1, 160.) DHHS's June 24, 2015 letter further states:

> The MaineCare Benefits Manual does not define "aggrieved." However, [the APA] uses the same standard of "aggrieved" to grant legal standing to "any person aggrieved by final agency action shall be entitled to judicial review..." Title 5, § 11001(1). Although the APA does not define "aggrieved", the Maine Supreme Court has had the opportunity to define "aggrieved" for purposes of the APA.
>
> The Maine Supreme Court has ruled that to be "aggrieved" in order to challenge final agency action, a litigant must demonstrate a particularized injury as a result of the action. *Great Hill Fill & Gravel, Inc. v. Board of Environmental*

---

[2] Intervenor AHC still argues that it was within DHHS's discretion to measure the sixty-day period from the date AHC received its decision on January 8, 2015, and that Cedars' request for informal review, though within sixty-days from when it obtained a copy of the decision, was still untimely. (Intervenor Br. 4.) Because DHHS concedes its determination was in error, the court does not address AHC's argument.

6

*Protection*, 641 A.2d 184 (Me. 1994). The agency decision must "adversely and directly" affect the litigant's "property, pecuniary or personal rights." *Id.* Further, a litigant "who suffers only an abstract injury does not thereby gain standing to sue." *Nichols v. City of Rockland*, 324 A.2d 295, 297 (Me. 1974).

(*Id.*) Cedars argues that the term "aggrieved" should be given a more expansive definition for purposes of § 1.21-1 of the MaineCare Benefits Manual than for the APA. (Pet. Br. 9.)

As previously discussed, an agency's interpretation of its own rules is given "considerable deference" and "will not be set aside unless the rule plainly compels a contrary result, or the rule interpretation is contrary to the governing statute." *Friends of the Boundary Mts.*, 2012 ME 53, ¶ 6, 40 A.3d 947. Section 1.21-1 of the MaineCare Benefits Manual does not define the term "aggrieved" and nothing in the rule plainly compels DHHS to adopt another definition. *See* 10-144 C.M.R. ch. 101 § 1.21-1. Furthermore, Cedars has not cited, and the court is not aware of, any provision in the governing statute that would compel DHHS to adopt a different definition. Therefore, the court defers to DHHS interpretation of its rules and its adoption of the APA definition of "aggrieved" for purposes of § 1.21-1.

C.    DHHS's Determination Cedars was not an "Aggrieved" Provider

To be an "aggrieved" party for purposes the APA, and therefore under § 1.21-1, a provider must show a "particularized injury," meaning DHHS's decision must "adversely and directly affect" the provider's "property, pecuniary or personal rights." (R. Vol. 1, 160) (internal quotation marks omitted); *see also Lindemann v. Comm'n on Governmental Ethics & Election Practices*, 2008 ME 187, ¶ 14, 961 A.2d 538 (defining "aggrieved" for purposes of the APA).

Cedars argues that its June 12, 2015 request for informal review sufficiently set forth a particularized injury in order to obtain an informal review. (Pet. Br. 9-11.) Cedars' June 12, 2015 request for informal review stated:

Although The Cedars was not a participant in the proceedings initiated by The Aroostook Medical Center/Aroostook Health Center, The Cedars is an aggrieved person. Reclassifying AHC from a free standing facility to a hospital-affiliated nursing facility, and thus reimbursing AHC as part of Peer Group III, will directly and adversely impact MaineCare reimbursement to The Cedars.

For purposes of an informal review, we intend to rely on the MaineCare definition of hospital-affiliated nursing facility, the changes to the MaineCare Manual over time, legislative history, and related documents. We also intend to rely on our understanding of MaineCare reimbursement, and discussion with Division of Audit Staff, to show how changing AHC's designation from a free standing nursing facility to a hospital-affiliated nursing facility will violate the letter and spirit of the Principles of Reimbursement for Nursing Facilities (especially Chapter III, Section 67, Principle 13), and directly and adversely impact reimbursement for the State of Maine and The Cedars itself.

(R. Vol. 1, 144.)

In its June 24, 2015 letter denying informal review, DHHS stated:

Finally, based on information and belief, it is my understanding that MaineCare reimbursement to Cedars has not been reduced – or changed at all – as a result of the AHC Decision.

(*Id.* at 159.) DHHS's June 24, 2015 letter concluded:

Cedars has not demonstrated any injury. Cedars' MaineCare reimbursement has not been impacted at all from the Department's AHC decision. Accordingly, Cedars is not "aggrieved" by the AHC Decision, and therefore, Cedars has no legal standing to appeal that decision.

(*Id.* at 160.)

DHHS's determination that Cedars was not aggrieved was the result of an error of law, arbitrary and capricious, and unsupported by record evidence. First, DHHS's determination that Cedars did not affirmatively demonstrate an injury in its request for informal review constitutes an error of law. Cedars' June 12, 2015 request set forth a prima facie case for how it will suffer a particularized injury and was aggrieved by the AHC Decision. (R. Vol. 1, 144.) Cedars made an offer of proof as to how it would demonstrate its injury for the informal review. (*Id.*) DHHS concluded that Cedars had not put forth evidence demonstrating an injury. (*Id.* at 160.)

8

Although the court generally must defer to an agency's interpretation of its own rules, the court will set aside an agency's interpretation if "the rule plainly compels a contrary result." *Friends of the Boundary Mts.*, 2012 ME 53, ¶ 6, 40 A.3d 947. Nothing in the plain language of § 1-21.1 required Cedars to submit evidence proving it is an aggrieved party as part of its request for informal review. Section 1.21-1 simply states:

> The request for an informal review must be in writing, to the Director of MaineCare Services or other specified Departmental official.

10-144 C.M.R. ch. 101 § 1.21-1. The plain language of § 1-21.1 contemplates that the provider may submit evidence after the request for informal review is granted. Section 1.21-1 states:

> This review will be conducted by the Director of MaineCare Services, or other designated Department representative who was not involved in the decision under review. The informal review will consist solely of a review of documents in the Department's possession ***including submitted materials/documentation*** and, if deemed necessary by the Department, it may include a personal meeting with the provider to obtain clarification of the materials. Issues that are not raised by the provider, individual, or entity through the written request for an informal review ***or the submission of additional materials for consideration prior to the informal review*** are waived in subsequent appeal proceedings.

*Id.* (emphasis supplied). In contrast, other provisions of the MaineCare Benefits Manual expressly require that a party to include all of its evidence in its request for informal review. For instance, § 140.1 of the MaineCare Benefits Manual explicitly stated:

> Within thirty (30) days of receipt of an audit or other appealable determination, the facility must request, in writing, an informal review before the Director of the Office of Audit or his/her designee. The facility must forward, with the request, any and all specific information it has relative to the issues in dispute, …

10-144 C.M.R. ch. 101 § 140.1.2(1) (2014). Thus, unlike other provisions of MaineCare Benefits Manual, § 1.21-1 did not expressly require Cedars to submit all of its evidence as part of its request for informal review. Therefore, because § 1.21-1 did not expressly require Cedars to submit its evidence as part of its request, and because § 1.21-1 contemplates that a provider may

submit evidence before the informal review occurs, DHHS's determination that Cedar did not demonstrate an injury in its written request constitutes an error of law.

Second, DHHS's reliance on "information and belief" in making its findings does not meet the substantial evidence standard and is arbitrary and capricious. In its June 24, 2015 letter, DHHS explicitly stated that it based its determination that Cedars' MaineCare reimbursements had not been reduced or changed as a result of the AHC Decision on "information and belief." (R. Vol. 1, 159.) As previously discussed, an agency's findings of fact must be supported by substantial evidence in the record and cannot be based on unsupported speculation. *Hannum,* 2003 ME 123, ¶ 15 n.6, 832 A.2d 765. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support the resultant conclusion." *Sinclair Builders, Inc.*, 2013 ME 76, ¶ 9, 73 A.3d 1061 (internal quotation marks omitted). DHHS's "information and belief" is not substantial evidence and is effectively akin to speculation. Additionally, an agency's determination is arbitrary and capricious if it is unreasonable, has no rational factual basis justifying the conclusion, or lacks substantial support in the evidence. *Cent. Me. Power Co.*, 281 A.2d at 242. DHHS's determination based on "information and belief" is both unreasonable and lacks a rational factual basis. Therefore, DHHS's finding of fact based on "information and belief" is unsupported by substantial evidence and arbitrary and capricious.

Third, DHHS's ultimate determination that Cedars' MaineCare reimbursements were not impacted by the AHC Decision is not supported by substantial evidence in the record. Again, substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support the resultant conclusion." *Sinclair Builders, Inc.*, 2013 ME 76, ¶ 9, 73 A.3d 1061 (internal quotation marks omitted). The only evidence in the record regarding Cedars'

10

MaineCare reimbursements are two MaineCare Rate Letters issued to Cedars. (R. Vol. 1, 155-58.) The first MaineCare Rate letter, dated July 21, 2014, states Cedars' reimbursement rates from July 1, 2014 through June 30, 2015. (*Id.* at 155-56.) In other words, the first MaineCare Rate letter sets forth Cedar's MaineCare reimbursement rates prior to the January 8, 2015 AHC Decision. The second MaineCare Rate letter sets forth Cedars' reimbursement rates from July 1, 2015 through June 30, 2016, after the AHC Decision. (*Id.* at 157-58.) However, the second MaineCare Rate letter is dated July 16, 2015. (*Id.* at 157.) Thus, the second MaineCare Rate letter was not part of the record before that date, and DHHS could not have considered it in making its determination in the June 24, 2015 letter. There is no other evidence in the record regarding Cedars' MaineCare reimbursement rates. Therefore, DHHS's determination that Cedars' MaineCare reimbursement rates were not impacted by the AHC Decision, and therefore Cedars' was not an aggrieved party, was not supported by substantial evidence in the record.

Because DHHS's determination that Cedars' was not an aggrieved party was the result of an error of law, arbitrary and capricious, and not supported by substantial evidence in the record, DHHS's June 24, 2015 denial of Cedars' request for informal review pursuant to § 1.21-1 must be reversed and remanded to DHHS for reconsideration. The court expresses no opinion on whether or not Cedars is, in fact, an aggrieved party under § 1.21-1.

**IV.    Conclusion**

Based on the foregoing, the Maine Department of Health and Human Services' decision denying Cedars Nursing Care Center d/b/a The Cedars' request for informal review is reversed and remanded to the Department of Health and Human Services for further consideration.

11

The Clerk is directed to enter this Order on the civil docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Date: 7/11/16

Lance E. Walker
Justice, Superior Court

12

STATE OF MAINE                           SUPERIOR COURT
CUMBERLAND, ss                           CIVIL ACTION
                                         Docket No. AP-15-21

CEDARS NURSING CARE CENTER
d/b/a THE CEDARS,

STATE OF MAINE
Cumberland. ss. Clerk's Office

              Petitioner

v.                               FEB 2 9 2016

MAINE DEPARTMENT OF HEALTH                ORDER
AND HUMAN SERVICES,       RECEIVED

              Respondent
and

THE AROOSTOOK MEDICAL CENTER/
AROOSTOOK HEALTH CENTER,

              Intervenor

Before the court is petitioner's motion to take additional evidence and supplement the record and its motion to stay the notice and briefing schedule. For the following reasons, the court denies the motion to take additional evidence and grants the motion to stay.

## I. FACTS

Respondent is the state agency responsible for implementing Maine's Medicaid program, known as MaineCare. Pursuant to this duty, respondent classifies nursing facilities into one of three Peer Groups for purposes of reimbursement. Petitioner operates a nursing facility in Portland, and intervenor Aroostook Health Center (AHC) operates a nursing facility in Aroostook County. Both facilities participate in MaineCare.

Respondent has classified petitioner's facility as Peer Group II. On January 8, 2015, respondent issued a decision changing AHC's classification from Peer Group II to Peer Group III. Petitioner received a copy of respondent's decision on May 8, 2015 in response to a Freedom of Access Act request. By letter dated June 12, 2015, counsel for petitioner requested from

1

respondent review of its January 8 decision. Respondent denied petitioner's request on June 24, 2015 on the grounds that the request was untimely and petitioner lacked standing.

Petitioner filed a Rule 80C petition on June 16, 2015 and an amended petition on July 14, 2015. Petitioner seeks (1) a declaratory judgment that respondent erred in changing AHC's classification to Peer Group III and (2) a permanent injunction preventing respondent from changing AHC's classification to Peer Group III and directing respondent to continue reimbursing AHC as a member of Peer Group II. Petitioner contends that respondent's January 8 decision will reduce the median costs used for calculating reimbursement of Peer Group II nursing facilities and will likely decrease the overall amount of MaineCare reimbursement available for nursing facilities that are not in Peer Group III.

On August 24, 2015, the court denied respondent's motion to dismiss and ordered respondent to file the administrative record within 30 days. Respondent filed the record on September 25, 2015. The court issued a briefing schedule on September 28, 2015. Petitioner filed its motion to take additional evidence and supplement the record and its motion to stay the briefing schedule on October 5, 2015. Respondent filed a motion in opposition on October 23, 2015, and AHC filed a motion in opposition on October 26, 2015.

## II. DISCUSSION

### A. Motion to Take Additional Evidence

"Except in limited circumstances, judicial review of an agency decision 'shall be confined to the record upon which the agency decision was based.'" *Martin v. Unemployment Ins. Comm'n*, 1998 ME 271, ¶ 8 n.6, 723 A.2d 412 (quoting 5 M.R.S. § 11006(1)) (citation to footnote only). A party may, however, request that the reviewing court take additional evidence or order the taking of additional evidence as provided by 5 M.R.S. § 11006(1). M.R. Civ. P.

2

80C(e). Under section 11006(1), the court may order the taking of additional evidence before the agency if it finds that the additional evidence is necessary to deciding the petition for review, or it may allow leave to present additional evidence if the evidence is material to the issues presented and could not have been presented or was erroneously disallowed in the proceedings before the agency. 5 M.R.S. § 11006(1)(B) (2015). "The Administrative Procedure Act leaves it to the discretion of the trial court to determine whether additional evidence is necessary to complete the record." *Murphy v. Bd. of Envtl. Prot.*, 615 A.2d 255, 260 (Me. 1992).

Petitioner argues that the record contains mostly respondent's "rules, licenses, and other generic material" and is missing "testimony, analysis, or other evaluation" of the impact of respondent's decision on other nursing facilities, including petitioner. (Pl.'s Mot. Addt'l Evid. 2-3.) Specifically, petitioner wishes to supplement the record with the following additional evidence: (1) transcripts of testimony explaining the MaineCare reimbursement and rate setting process to be provided by, at a minimum, petitioner's CFO, the director of respondent's Division of Audit, and a financial analyst in respondent's Rate Setting Unit; (2) respondent's internal emails and memoranda relating to its January 8 decision and any impact on nursing facilities other than AHC; and (3) any documentation showing the assignment of nursing facilities to each of the Peer Groups and any changes of those assignments. (*Id.* at 4-5.)

Petitioner's proffered evidence is not necessary or material because the only issue properly before the court is whether respondent erred in denying petitioner's June 12 request for administrative review. The Administrative Procedure Act (APA) entitles any person who is aggrieved by final agency action to judicial review in Superior Court. 5 M.R.S. § 11001(1) (2015). "Final agency action" means a "decision by an agency which affects the legal rights, duties or privileges of specific persons, which is dispositive of all issues, legal and factual, and

3

for which no further recourse, appeal or review is provided within the agency." 5 M.R.S. § 8002(4) (2015). Respondent's January 8 decision cannot be final agency action because further review of that decision was available within the agency. *See* 10-144 C.M.R. ch. 101, § 140.1.2(1) (2014) (providing administrative review of agency decisions); 10-144 C.M.R. ch. 101, § 1.21-1 (2014) (same). Indeed, petitioner's June 12 letter requested administrative review of the January 8 decision. Respondent's denial of that request on June 24 left petitioner with no further review within the agency, and it is from that decision that petitioner appeals to this court. *See* 10-144 C.M.R. ch. 101, § 140.1.2(4) (2014) (authorizing judicial review of administrative review); 10-144 C.M.R. ch. 101, § 1.21-1(A) (2014) (same).

In its June 24 decision, respondent denied petitioner's request for review on the following grounds: (1) the request was untimely under both section 140.1.2(1) and section 1.21-1 because it was filed beyond the respective 30 and 60 day appeal periods; (2) petitioner lacked standing under section 140.1 because it was not the facility to which the January 8 decision issued; and (3) petitioner lacked standing under section 1.21-1 because it was not aggrieved by the decision. The court's review is confined to these issues. *See* 5 M.R.S. § 11001(1) (allowing judicial review of final agency action); M.R. Civ. P. 80C(a) (same). Petitioner's proffered evidence, which challenges the merits of respondent's January 8 decision, is not necessary or material to determining whether petitioner's June 12 request was timely or whether petitioner had standing to make that request. The court therefore denies the motion to take additional evidence.

B. Motion to Stay

The briefing schedule has been stayed pending this order. *See* M.R. Civ. P. 80C(e) ("Upon the filing of a motion for the taking of additional evidence, the time limits contained in this rule shall cease to run pending the issuance of an appropriate order of court specifying the

4

future course of proceedings with that motion."). The court orders the following revised briefing schedule pursuant to M.R. Civ. P. 80C(g):

1. Petitioner's brief is due within 40 days of the date of this order.

2. Respondent's brief and AHC's brief are due within 30 days after the service of petitioner's brief.

3. Petitioner's reply brief, if any, is due within 14 days after last service of the brief of any other party.

## III.  CONCLUSION

The court hereby ORDERS that petitioner's motion to take additional evidence and supplement the record is DENIED and its motion to stay the briefing schedule is GRANTED.

Pursuant to M.R. Civ. P. 79(a), the clerk is directed to incorporate this Order by reference in the docket.

Dated: _Febuary 29 2016_

Roland Cole
Chief Justice, Superior Court

5

STATE OF MAINE
CUMBERLAND, SS.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-15-21

CEDARS NURSING CASE CENTER
d/b/a/ THE CEDARS,

Petitioner,

v.

MAINE DEPARTMENT OF HEALTH
AND HUMAN SERVICES,

Respondent.

**ORDER**

STATE OF MAINE
Cumberland, ss, Clerk's Office

AUG 2 4 2015

RECEIVED

I. Background

Petitioner the Cedars appeals from two related decisions. The first is a January 8, 2015 decision by the Department of Health and Human Services (DHHS) that re-classified the Aroostook Health Center (AHC) from Peer Group II to Peer Group III ("the AHC decision"). The Cedars contends the AHC decision will affect its MaineCare reimbursement rates. The second decision is one dated June 24, 2015, in which DHHS denied the Cedars's request for an informal review or administrative hearing of the AHC decision.

DHHS moves for an extension of time to file the administrative record and also moves to dismiss the complaint under Rule 12(b)(6).

II. Discussion

A. The Administrative Record

Under Rule 80C(f), "The agency shall file the complete record of the proceedings under review as provided by 5 M.R.S. § 11005." Under 5 M.R.S. § 11005, "The agency

shall file in the reviewing court within 30 days after the petition for review is filed." If the

the petitioner believes the record is incomplete or over-inclusive, Rule 80C(f) sets forth a

procedure whereby the agency and petitioner work to modify the record. If unable to

agree, the petitioner can file a motion with the court to modify the contents of the record.

DHHS requested an extension to file the administrative record on the grounds that

if the motion to dismiss is granted, the record need not be filed. If however the motion is

denied, the court's decision will help DHHS determine the scope of materials to include.

DHHS takes the position that the decision to reclassify AHC from Peer Group II to Peer

Group III is not appealable by the Cedars and have moved to extend the deadline until

after a ruling on the motion to dismiss in order to avoid filing materials related to that

proceeding.

B.  Motion to Dismiss: Standing

When considering a motion to dismiss, the court considers the allegations

contained in the complaint as true and admitted by the defendant. *Annable v. Bd. of Envtl.*

*Prot.*, 507 A.2d 592, 593 (Me. 1986). On a 12(b)(6) motion, the court determines whether

the complaint states a claim "upon which relief can be granted." M.R. Civ. P. 12(b)(6).

DHHS chiefly argues that the Cedars is not "aggrieved" and cannot appeal the

AHC decision.[1] *See* 5 M.R.S. § 11001 ("[A]ny person who is aggrieved by final agency

action shall be entitled to judicial review thereof in the Superior Court.") "A person is

aggrieved within the meaning of the APA if that person has suffered particularized

injury—that is, if the agency action operated prejudicially and directly upon the party's

---

[1] DHHS also argues there has been no "final agency action" because the Cedars is not an aggrieved party. Because the argument hinges on the Cedars's status as an aggrieved party, the court considers the final agency action as part of the standing analysis.

2

property, pecuniary or personal rights." *Nelson v. Bayroot, LLC*, 2008 ME 91, ¶ 10, 953 A.2d 378.

The amended complaint[2] alleges that the Cedars is aggrieved in two respects. First, the change in designation from Peer Group II to Peer Group III "will reduce median costs used for calculating reimbursement of Peer Group II facilities, which will in turn reduce MaineCare reimbursement to the Cedars." Second, "using the 'higher hospital affiliated rate' to reimburse AHC will also likely mean a decrease in overall MaineCare reimbursement available to reimburse nursing facilities not in Peer Group III, such as the Cedars." (Pet. Compl. ¶¶ 23-24.)

DHHS argues the Cedars is not "aggrieved" because as a factual matter, the Cedars's MaineCare reimbursement remains unaffected by the AHC decision. In other words, because any potential consequences flowing from the AHC decision have not yet materialized, any injury or aggrieved status the Cedars could claim remains too speculative to support standing.

Taking the facts alleged in the complaint as true and admitted by the Defendant, the Cedars will suffer a decrease in MaineCare reimbursement that will be proximately caused by the AHC decision. If true, this is a sufficiently particularized injury to support standing at the motion to dismiss stage, especially where the agency has failed to timely file the administrative record. Without the record, the court has a limited context to evaluate the rights affected by the AHC decision. *Nelson*, 2008 ME 91, ¶ 10, 953 A.2d 378 ("We examine the issue of standing in context to determine whether the asserted effect on the party's rights genuinely flows from the challenged agency action.") The

---

[2] DHHS does not oppose the motion to amend. The court grants the motion to amend and considers the amended complaint for the purposes of this order.

complaint states a sufficiently particularized injury to support standing. The motion is therefore denied.

III.    Conclusion

As set forth above, the scope of the record is to be determined by reference to scope of proceedings challenged at the agency level in the 80C petition. The agency is responsible for filing the record, but lacks the prerogative to strategically withhold the record in an effort to preemptively limit the issues fairly raised by the appeal. M.R. Civ. P. 80C(f). Rule 80C(f) requires DHHS file a "complete record," including materials related to the AHC classification decision that the Cedars appeals.

The clerk shall enter the following:

> The Respondent's motion to dismiss is DENIED. The Respondent is hereby ordered to file the administrative record within 30 days.

SO ORDERED.

DATED: August 24, 2015

_____
Roland Cole
Chief Justice, Superior Court

4

Date Filed: 06/16/2015     CUMBERLAND     Docket No. AP15-0021
                      COUNTY

Action: 80C APPEAL

CEDARS NURSING CARE CENTER         MAINE DEPARTMENT OF HEALTH AND
D/B/A THE CEDARS                    HUMAN SERVICES

                         vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| MICHAEL A. DUDDY, ESQ | JANE B. GREGORY, AAG |
| KELLY, REMMEL, & ZIMMERMAN | OFFICE OF THE ATTORNEY GENERAL |
| 52 EXCHANGE STREET, P.O. BOX 597 | 6 STATE HOUSE STATION |
| PORTLAND, ME. 04112 | AUGUSTA, ME. 04333 |

Date of Entry